## C. D. MacLAREN AND ANOTHER v. SIGVARD WOLD.[1]

September 30, 1927.

No. 25,240.

**Stock of co-operative association in excess of $100,000 invalid.**

Upon reargument it is *held* that the stock of the Goodhue company issued in excess of $100,000 was invalid; that the defendant is liable on his constitutional double liability for his shares of stock which were a part of the $100,000; and that he is not liable beyond such shares.

Corporations, 14 C. J. p. 493 n. 37; p. 502 n. 47.

Appeal from an order of the district court for Goodhue county, Albert Johnson, J., denying plaintiffs' motion for a new trial. A former opinion is reported in 168 Minn. 234. A reargument was granted, and the views of the court are modified as stated in the opinion. Reversed and remanded.

*Thos. Mohn, Horace W. Mohn, Todd, Fosnes & Sterling,* and *R. H. de Lambert,* for appellants.

*A. J. Rockne, Albert Mohn, Charles P. Hall, P. E. Sargent,* and *F. M. Wilson,* for respondent.

AFTER REARGUMENT.

DIBELL, J.

Our original opinion is reported in 168 Minn. 234, 210 N. W. 29. A rehearing was granted upon the interpretation and constitutionality, as applied to this appeal, of L. 1919, p. 401, c. 382.

The Goodhue company was organized as a co-operative association. R. L. 1905, § 3075, G. S. 1913, § 6483, G. S. 1923, § 7826. The statute provides:

"The amount of capital stock shall be fixed by the certificate of incorporation, which amount and the number of shares may be increased or diminished at a stockholders' meeting specially called

---

[1]Reported in 215 N. W. 428.

for that purpose; but the whole amount of stock shall never exceed $100,000 * * *."

A provision for the amendment of the charter of a co-operative association authorized for limited purposes was early in the statutes. L. 1870, p. 50, c. 29; G. S. 1878, c. 34, § 159.

Section 2871, R. L. 1905, which with some amendments not important here is G. S. 1913, § 6185, G. S. 1923, § 7472, provides:

"The certificate of incorporation of any corporation now or hereafter organized and existing under the laws of this state may be amended so as to change its corporate name, or so as to increase or decrease its capital stock, or so as to change the number and par value of the shares of its capital stock, or in respect of any other matter which an original certificate of a corporation of the same kind might lawfully have contained, by the adoption of a resolution specifying the proposed amendment, at a regular meeting or at a special meeting called for that expressly stated purpose, in either of the following ways: (1) by majority vote of all its shares, if a stock corporation; or, if not, (2) by a majority vote of its members; * * *"

A provision in some respects similar is found in L. 1875, p. 55, c. 19, § 1; G. S. 1878, c. 34, § 118; L. 1885, p. 198, c. 155.

It is recognized that provisions in the articles of incorporation may be so fundamental that they are contractual within the meaning of the constitution and legislation cannot authorize a change. Bergman v. St. Paul Mut. Bldg. Assn. 29 Minn. 275, 13 N. W. 120; Mower v. Staples, 32 Minn. 284, 20 N. W. 225; Grisim v. South St. Paul L. S. Exch. 152 Minn. 271, 188 N. W. 729. Some provisions are not of so fundamental a character.

The provisions in the two sections quoted relative to the change of the capital stock were inserted, in part at least, for the protection of the stockholders. So was the provision as to the amount of capital stock of a co-operative association such as the Goodhue company. It may be queried whether legislation, such as the act of 1919, if it be held to permit an existing co-operative association

to come under the act, and be subject to a change in its capital stock, at a meeting where the stock and stockholders are so meagerly represented as §§ 5 and 12 contemplate, would be constitutional. The question is important. It may arise in other litigation. It should not be decided except when the necessities of a case demand.

Upon a more thorough consideration after reargument we think we were mistaken in our former view. Our opinion now is that § 5 providing for corporation action with so meager a representation of stockholders should be construed as referring to corporate action when the association was originally created under L. 1919, or became subject to that act in accordance with the provisions of § 11. Section 11 provides that a corporation such as the Goodhue company

"may come under the provisions of this act and be bound thereby upon filing with the proper official a copy of the resolution authorizing such action adopted by the stockholders of such corporation or association in the manner provided for the adoption of amendments."

We construe the provision for the adoption of a resolution "in the manner provided for the adoption of amendments" as referring to the methods provided in the sections we have quoted antedating the 1919 act, and it is unimportant which one for there was compliance with neither. Section 5 defines "quorums" and § 12 permits an amendment by a vote such as is authorized by § 5, and the two are in harmony, both referring to a corporation organized under the 1919 act or one coming under it in compliance with the provisions of § 11.

The result is that there was an improper issue of the three shares taken by the defendant after the attempted but unauthorized increase of stock under the 1919 act. The defendant is liable upon the two shares of stock first issued to him but not upon the other three. We do not mean to say that the stock of a corporation such as the plaintiff could never be increased to an amount beyond $100,000. We intimate no view upon it for the construction we have placed upon the 1919 act eliminates the need of it. We do not say that a

corporation and its stockholders may not so act that the stockholders are estopped to claim that they are not bound by irregularly issued stock. The finding of the trial court is that there was no estoppel, and upon further consideration we conclude that it was the proper one.

In the former opinion we stated that G. S. 1923, § 7472, which we have before quoted, did not apply. In view of the conclusion which we have reached that statement is unnecessary and is withdrawn.[1]

What is said in paragraphs 1 and 2 of our former opinion embodies our present view.[2] The same is true of paragraph 3, but the limit of indebtedness following the amount of stock under our present construction is $100,000 instead of $400,000.

It is our understanding that this litigation determines the rights and liabilities of substantially all the stockholders. It is our effort to make possible the ending of the controversy without further litigation. Stockholders like the defendant are liable on the first $100,000 of stock issued. They are not liable for any in excess. The liability of the defendant may be determined in the trial court without further evidence upon application made.

So far as in conflict with the views now expressed the former opinion is vacated, the order from which the appeal is taken stands reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed.

[1][See 168 Minn. 239, 240. Reporter.]   [2][See 168 Minn. 236. Reporter.]