G. William **FILLEY** and Carole S. **Filley,** Plaintiffs-Appellants,

v.

**KICKOFF PUBLISHING COMPANY,** Inc., et al., Defendants-Appellees.

No. 71-1215.

United States Court of Appeals, Sixth Circuit.

Feb. 8, 1972.

James C. Lee, Chattanooga, Tenn., for appellants; Fort & Lee, Chattanooga, Tenn., of counsel.

Ford P. Mitchell, Chattanooga, Tenn., for appellees; Swafford & Taylor, Chattanooga, Tenn., of counsel.

Before PHILLIPS, Chief Judge, and CELEBREZZE and MILLER, Circuit Judges.

PHILLIPS, Chief Judge.

Minority shareholders appeal from summary judgment in a diversity action which is controlled by Tennessee law. We affirm.

The relevant facts are undisputed. Kickoff Publishing Company is a closely held Tennessee corporation having its principal place of business in Chattanooga. R. J. Jones, Lela V. Jones and R. K. Jones are officers and directors of Kickoff owning a controlling interest in the corporation. In 1966, G. William Filley and Carole S. Filley inherited shares of Kickoff representing a 22 per cent interest.

Kickoff had been in a marginal financial position since its organization in 1951. In 1969, the condition became critical. Operating capital was badly needed and banks had refused to extend credit in light of the corporation's undercapitalization. On May 8, 1969, the board of directors met to consider the situation. The board decided to increase Kickoff's capitalization from $25,000 to $100,000 by issuing additional shares of common stock with pre-emptive rights in favor of existing shareholders. A resolution to amend the charter to provide for the increase was unanimously passed.

On June 11, 1969, at a stockholders' meeting duly called for that purpose, the

resolution was presented for approval. The resolution was adopted over the dissenting vote of the Filleys. The Filleys then announced that they wished to withdraw from the corporation and be paid the value of their stock.

Immediately after adjournment of the stockholders' meeting, the board met to consider the Filleys' action. It was decided to call a special stockholders' meeting to consider recision of the capitalization amendment. At this meeting, on June 30, 1969, the recapitalization amendment was rescinded.[1]

The foregoing dates are of particular importance since the new Tennessee General Corporation Law became effective July 1, 1969. This Act repealed the former T.C.A. § 48–712 relied upon by the Filleys, and substituted new provisions regarding the rights of and procedures for dissenting stockholders to withdraw and demand payment for their stock. These new provisions are codified in T.C.A. §§ 48–909 through 48–919.

There is no question that, had this new statute been effective on June 11, 1969, the amendment approved on that date would not have given rise to any withdrawal rights in favor of the Filleys.

Prior to July 1, 1969, T.C.A. § 48–712 provided:

> "*Legislative repeal or amendment of charter.*—If the charter is repealed, or if amended and the amendment or amendments proposed, being not merely auxiliary, but fundamental, be rejected by a vote representing one-half (½) of the stock, or more, the corporation shall continue to exist for the purpose of winding up its affairs, but not to enter upon any new business. If the amendments or modifications, being fundamental, are accepted by a majority of the capital stock of the corporation, in a general meeting to

be called for that purpose, any minor, or other person under disability, or any stockholder not agreeing to the acceptance of the modification, shall cease to be a stockholder, and the corporation shall be liable to pay said withdrawing stockholder the par value of his stock, if it is worth so much; if not, or it is worth more, then so much as may be its real value in the market, on the day of the withdrawal of said stockholder; provided, that the claims of all creditors are to be paid in preference to any such withdrawing stockholder."

■ Kickoff contends that the recision of the amendment at the June 30 meeting divested the Filleys of any rights which they may have had under this section. We do not agree. On June 12, 1969, a certificate evidencing the stockholder approval of the amendment was duly filed in the office of the Tennessee Secretary of State and the State seal affixed thereto. At that time, the "amendment [was] complete, and the validity of the same [could] not in any legal proceeding and by any person, be collaterally questioned." Former T.C.A. § 48–120, repealed, Acts 1968, ch. 523, § 1 (17.02(j)), now T.C.A. § 48–303(2) (1968 Spec. Supp.).

■ At the time the charter was amended, asserted rights of the Filleys as dissenting shareholders became fixed. No further action by the corporation could divest such rights. *See* Johnson v. DeSoto Hardwood Flooring Co., 167 Tenn. 145, 147, 67 S.W.2d 143, 144 (1934). Kickoff urges that it would be inequitable to refuse to give effect to the recision since the Filleys gave no notice prior to the meeting of their intent to dissent and withdraw.[2] We recognize that principles of equity apply to these actions. However, the emergency board meeting of June 11 considered the Fil-

---

1. At a shareholders' meeting on September 8, 1969, recapitalization to $70,000 was approved by the shareholders. The Filleys concede that this action gave them no withdrawal rights.

2. We note that present Tennessee law requires such pre-meeting notice as a condition to the exercise of withdrawal rights. *See* T.C.A. § 48–910.

leys' dissent and recommended consideration by the shareholders of recision. Nonetheless, the corporation deliberately caused the charter to be amended prior to the June 30 meeting. The so-called recision of that date was not reflected in a charter amendment canceling the June 12 amendment. Under such circumstances, we find the lack of pre-meeting notice to be an insufficient basis to withhold relief.

■ We turn now to the substantive question of whether the amendment was "fundamental" within the meaning of former § 48–712. We conclude that it was not.

The basic principles guiding resolution of this question are well established.

"There is much discussion in the authorities as to when a charter amendment is of that fundamental character that a majority of the members or stockholders cannot bind the minority by agreeing to a change in the nature of the business to be carried on or the purposes and objects for which the corporation was created. Each case depends upon its own circumstances, and how far the right of amendment has been impliedly or expressly reserved in the creation of corporate rights. It would be unreasonable and oppressive to require a member or stockholder to remain in a corporation whose fundamental purposes have been changed against his will. On the other hand, where the right of amendment is reserved in the statute or articles of association, it is because the right to make changes which the business may require is recognized, and the exercise of the privilege may be vested in the controlling body of the corporation. In such cases, where there is an exercise of power in good faith, which does not change the essential character of the business, but authorizes its extension upon a modified plan, both reason and authority support the corporation in the exercise of the right." Wright v. Minnesota Mutual

Ins. Co., 193 U.S. 657, 663–664, 24 S. Ct. 549, 551, 48 L.Ed. 832 (1904).

"Amendments which do not change the nature, purpose, or character of a corporation or its enterprise, but which are designed to enable the corporation to conduct its authorized business with greater facility, more beneficially, or more wisely, are auxiliary to the original object." Mower v. Staples, 32 Minn. 284, 286, 20 N.W. 225, 226 (1884).

■ The parties have not cited, and our research has not revealed, any reported Tennessee decision on the precise issue involved. Under such circumstances, the function of this court is "to choose the rule which it believes the state court . . . is likely in the future to adopt." C. A. Wright, Federal Courts 206 (1963). District Judge Frank W. Wilson, a member of the Tennessee bar for 30 years and a District Judge in the Eastern District of Tennessee for ten years, found that the recapitalization amendment was not "fundamental" under Tennessee law. This interpretation is entitled to considerable weight in this court. In re Glassman, 262 F.2d 857, 859 (6th Cir. 1958).

We agree with Judge Wilson's ruling. The sole reported Tennessee case dealing with the term "fundamental" in relation to the rights of dissenting shareholders is *Johnson v. DeSoto Hardwood Flooring Co., supra*, 167 Tenn. 145, 67 S.W.2d 143, construing § 2060 of Shannon's Tennessee Code. The Supreme Court of Tennessee held that recapitalization by issuance of preferred stock, having priority in distribution of earnings and assets over outstanding common stock, was a "fundamental" change entitling stockholders to withdraw. *Johnson* emphasized that more than simple recapitalization was involved, specifically noting the priority rights of the new issue. *Id.* at 147, 67 S.W.2d at 144. Implicit in *Johnson* is the construction of the statute whereby increased capitalization alone is not a "fundamental" change. We are confident that the Tennessee Supreme

Court would so rule if presented with the question.

This construction is supported by the Law Revision Commission comments to T.C.A. § 48–909 [3] indicating that it merely clarifies and consolidates prior law, including former § 48–712, relating to corporate actions entitling dissenting shareholders to withdraw.

Affirmed.

Levet, District Judge, filed a dissenting opinion.

3. Under present Tennessee law, recapitalization gives withdrawal rights only where the charter amendment also, as to existing shares:

"(i) alters or abolishes any preferential right of such shares; (ii) creates, alters or abolishes any provision or right in respect of the call of such shares; (iii) alters or abolishes any preemptive right of the holder of such shares to acquire shares or other securities; or (iv) excludes or limits the right of the holder of such shares to vote on any matter, except as such right may be limited by the voting right given to new shares of any existing or new class which are being authorized by the amendment." T.C.A. § 48–909(2) (1968 Spec.Supp.)